UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEVE SATAR JABAR,

                           Plaintiff,

            v.

U.S. DEPARTMENT OF JUSTICE,

                         Defendant.
_____

|  |  |  |
|---|---|---|
|  |  | REPORT |
|  |  | and |
|  |  | RECOMMENDATION |
|  |  | 17-CV-301JLS(F) |

APPEARANCES:      MICHAEL KUZMA, ESQ.
                         Attorney for Plaintiff
                         1893 Clinton Street
                         Buffalo, New York  14206

                         TRINI E. ROSS
                         UNITED STATES ATTORNEY
                         Attorney for Defendant
                         MICHAEL S. CERRONE
                         Assistant United States Attorney, of Counsel
                         Federal Centre
                         138 Delaware Avenue
                         Buffalo, New York  14202

## **JURISDICTION**

This case was referred to the undersigned by Honorable Lawrence J. Vilardo[1] on November 16, 2017, for all pretrial matters including preparation of a report and recommendation on dispositive motions.  The matter is presently before the court on Defendant's motion for summary judgment filed November 30, 2020 (Dkt. 43).

---

[1] By Text Order entered January 5, 2020, the matter was reassigned to Honorable John L. Sinatra, Jr. (Dkt. 24).

## BACKGROUND

Plaintiff Steve Satar Jabar ("Plaintiff" or "Jabar"), commenced this action pursuant to the Freedom of Information Act ("FOIA" or "the Act"), 5 U.S.C. § 552 *et seq*., on April 10, 2017, seeking an injunction and other relief, including the disclosure and release of agency records withheld by Defendant United States Department of Justice ("Defendant" or "DOJ"), and its component Federal Bureau of Investigation ("FBI").  The information Plaintiff seeks pertains to the FBI's investigation and the eventual conviction of Plaintiff for conspiracy to commit wire fraud, wire fraud, and making false statements to conceal the conspiracy and fraud.  On May 11, 2017, DOJ filed its answer (Dkt. 5), and on March 13, 2020, DOJ filed a so-called *Vaughn* Index (Dkt. 28).[2]

On November 30, 2020, Defendant filed a motion for summary judgment (Dkt. 43) ("Defendant's Motion"), along with a Memorandum of Law (Dkt. 44) ("Defendant's Memorandum"), a Statement of Undisputed Facts (Dkt. 45) ("Defendant's Statement of Facts"), and the Declaration of Michael G. Seidel (Dkt. 46) ("Seidel Declaration"), attaching a volume of exhibits A through EE (Dkt. 46-1) ("Defendant's Exh(s). __"). Filed as Defendant's Exh. EE is another copy of the *Vaughn* Exhibit (Dkt. 46-1 at 136-149).  On January 4, 2021, Plaintiff filed the Memorandum in Opposition to Defendant's Motion for Summary Judgment (Dkt. 48) ("Plaintiff's Response"), attaching the Affidavit of Deborah Bowers (Dkt. 48-1) ("Bowers Affidavit"), the Affidavit of Michael Kuzma, Esq,

---

[2] The "*Vaughn* Index" refers to an index prepared by the agency upon whom a FOIA request is made setting forth all materials otherwise responsive to the FOIA request but which the agency withholds as exempt as well as the exemptions asserted as justifying the withholdings.  *See Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977 (1974) (requiring government agency, in responding to FOIA request, prepare a list of documents withheld as exempt, either in full or in part, and furnish detailed justification for the asserted exemptions).

(Dkt. 48-2) ("Kuzma Affidavit"), the Affirmation of Mark J. Mahoney, Esq. (Dkt. 48-3) ("Mahoney Affirmation"), attaching a volume of exhibits (Dkt. 48-4) ("Plaintiff's Exh(s). __"), and Plaintiff's Statement of Undisputed Facts and Response to Defendant's Statement of Undisputed Facts (Dkt. 48-5) ("Plaintiff's Statement of Facts").  On January 22, 2021, Defendant filed the Reply Memorandum of Law (Dkt. 49) ("Defendant's Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendant's Motion should be GRANTED.

## FACTS[3]

In 1989, following the end of the Iran-Iraq war, Plaintiff Steve Satar Jabar ("Plaintiff" or "Jabar"), a native of Iraq, immigrated with his wife and young child to the United States where Plaintiff was granted asylum based on Jabar's opposition to the regime of Saddam Hussein.  In 1996, Plaintiff became a naturalized United States citizen.  After arriving in the United States, Plaintiff, who is fluent in Arabic, Farsi, and Kurdish, and familiar with Middle Eastern culture and customs, volunteered as a translator for various refugee organizations in Buffalo, New York, worked as a translator in courts in the Buffalo area, and occasionally assisted the FBI with various investigations.  After the September 11, 2001 terrorist attacks, Plaintiff became an Asylum Officer with Department of Homeland Security – Citizen and Immigration Services ("DHS/CIS").

In 1995, Plaintiff and one Deborah Bowers ("Bowers"), founded Opportunities for Kids International ("OKI"), a not-for-profit organization that provided monetary, immigration, and education assistance to Kurdish refugees in New York State.  Bowers

---

[3] Taken from the pleadings and motion papers filed in this action.

served as OKI's executive director and Plaintiff as its treasurer.  On June 2004, Plaintiff and Bower, on OKI's behalf, applied to the United Nations Development Fund for Women ("UNIFEM") for a $ 500,000 grant ("the grant") to establish a radio station in Iraq, Voice of Women ("VOW"), which was to broadcast programming to educate Iraqi women on democratic processes, increase civic engagement, and make Iraq more stable.  The grant was approved and on December 15, 2004, OKI received the initial $ 350,000 disbursement ("initial disbursement").  Plaintiff and Bowers, however, converted a portion of the funds in the initial disbursement for personal use, and failed to comply with financial reporting requirements, causing UNIFEM to investigate and audit the initial disbursement which showed unauthorized expenditures and inadequate receipts.  Based on the investigation, UNIFEM did not release the remaining $ 150,000. In 2005, the Internal Revenue Service ("IRS"), received suspicious activity reports flagging attempted transfers from OKI's bank account to bank accounts in the Middle East, and commenced an investigation.

On May 21, 2009, a grand jury returned a 14-count indictment charging Plaintiff and Bowers each with one count of conspiracy to commit wire fraud, three counts of wire fraud, five counts of money laundering, and five counts of making false statements, *U.S.A. v. Jabar*, 09-CR-170 (W.D.N.Y.) ("the criminal case").  On September 2, 2016, following a five-week jury trial trial, Plaintiff and Bowers were convicted in the criminal case of conspiring to commit wire fraud, wire fraud, and making false statements. Plaintiff and Bowers moved pursuant to Fed.R.Crim.P. 29 for a judgment of acquittal ("Rule 29 motion"), and pursuant to Fed.R.Crim.P. 33 for a new trial ("Rule 33 motion").

By letter dated October 25, 2016, Plaintiff, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a ("Privacy Act"), submitted a FOIA/Privacy Act ("FOIPA") request ("FOIA Request") to the FBI for any and all records pertaining to Plaintiff.  Defendant's Exh. A (Dkt. 46-1 at 2-4). Plaintiff's FOIA Request was accompanied by the required DOJ Certificate of Identity, Form DOJ-361 ("Certificate of Identity forms"), completed with Plaintiff's  information and signature.  *Id*. (Dkt. 46-1 at 5).  On October 25, 2016, the FBI acknowledged receipt of the FOIA Request.  Defendant's Exh. B (Dkt. 46-1 at 7-8).  By letter dated February 2, 2017, Plaintiff filed an appeal to the DOJ Office of Information Policy ("OIP"), complaining the FBI failed to respond the FOIA Request within the statutory 20 days. Defendant's Exh. C (Dkt. 46-1 at 10).  On February 17, 2017, OIP acknowledged receipt of the appeal, Defendant's Exh. D (Dkt. 46-1 at 12), and on March 2, 2017, advised Plaintiff that because the FBI did not make an adverse determination of Plaintiff's FOIA Request, no action could be taken on Plaintiff's appeal.  Defendant's Exh. E (Dkt. 46-1 at 14).  On April 10, 2017, Plaintiff commenced the instant action.

Thereafter, the FBI made 21 interim releases of records responsive to Plaintiff's FOIA Request.  Defendant's Exhs. F to DD (Dkt. 46-1 at 15-135).  In total, the FBI processed 5,368 pages responsive to Plaintiff's FOIA Request, of which 154 pages were released in full ("RIF"), 632 pages were released in part ("RIP"), and 4,582 pages were withheld in full ("WIF").  Seidel Declaration ¶ 4.  The FBI explains the withheld information, whether in full or in part, was duplicative of other pages accounted for elsewhere within the FBI's production, sealed pursuant to a United States Court Order, or exempted from disclosure pursuant to one of FOIA's separately enumerated

exemptions.  *Id*.  The specific exemptions on which the FBI relies includes Privacy Act exemption (j)(2) ("PA (j)(2)"), and FOIA exemptions 1, 3, 5, 6, 7(C), 7(D), 7(E), and 7(F), 5 U.S.C. §§ 552(b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F). *Id*.  Pursuant to an agreement between the parties, review of the records responsive to the FOIA Request was limited to a 503-page sample of responsive records the FBI released to Plaintiff.

In connection with the pending motion, an explanation as to how Plaintiff's FOIA Request was processed is provided by Michael G. Seidel ("Seidel"), Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD").  According to Seidel, in fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency, the FBI compiles and maintains in the Central Records System ("CRS") records consisting of applicants, investigative, intelligence, personnel, administrative, and general files.  The CRS maintains records for the entire FBI organization including FBI Headquarters ("FBIHQ"), FBI Field Offices, and FBI Legal Attached Officers ("Legats") worldwide.

CRS files are numerically sequenced and organized according to designated subject categories referred to as "FBI classifications."  As each FBI case file is opened, the file is assigned a Universal Case File Number ("UCFN") consisting of three sequential components including (1) the CRS file classification number; (2) the abbreviation of the FBI Office of Origin ("OO") initiating the file; and (3) the assigned individual case file number for that particular subject matter.  Within each case file, certain documents of interest are "serialized" *i.e.*, assigned a document number in the order in which the document is added to the file, typically in chronological order.

Records are located within the CRS through its general indices with the files alphabetized according to subject matters including individuals, organizations, events and subjects of investigative interest.  Entries in the general indices fall into two categories including (1) a main entry created for each individual or non-individual that is the subject or focus of an investigation, and (2) a reference or "cross-reference" entry created for individuals or non-individuals associated with a case, but not the main subject or focus of an investigation.  Reference subjects typically are not identified in the case title of a file.  CRS indexing information is done by FBI investigators who have the discretion to deem information sufficiently significant to warrant indexing for future retrieval.  Thus, not every individual name, organization, event, or other subject matter is separately indexed in the general indices.

In 1995, Automatic Case Support ("ACS"), an electronic, integrated case management system was implemented with CRS records converted from automated systems previously utilized by the FBI into a single, consolidated case management system accessible by all FBI offices.  ACS searches were conducted through use of the Universal Index ("UNI") which provides an electronic means to search by indexing pertinent investigative information including such identifying information as name, date of birth, race, sex, locality, social security number, address, and date of an event.  On July 1, 2012, the Sentinel system ("Sentinel") became the effective FBI-wide case management system.  Sentinel includes the same automated applications utilized in ACS, and also provides a web-based interface to FBI users.  Sentinel did not replace ACS, however, until August 1, 2018, when ACS data was migrated into Sentinel including ACS indices data and digitalized investigative records.  Sentinel also retains

the index search methodology and function whereby the CRS is queried via Sentinel for pertinent indexed main or reference entries in case files.  As such, CRS index data from the UNI application previously searched via ACS is now searched within Sentinel using the "ACS Search" function.

Accordingly, upon receiving FOIPA requests for information on subject matters predating implementation of Sentinel, RIDS begins its searching efforts by conducting index searches via Sentinel's ACS Search function, followed by an index search of Sentinel records to ensure any subsequent records or data relevant to the FOIPA request are located.  The CRS automated indices are updated daily with searchable material newly indexed in Sentinel.

Each page of the records responsive to Plaintiff's FOIA Request is Bates-stamped.  The FBI provides a "*Vaughn* Index" listing a description of each document with the associated Bates-stamped page number, and a chart indicating for each record whether it was released in full, released in part, or withheld in full, as well as on which FOIA Exemption the FBI relies to support withholding the information.  The *Vaughn* Index in this case is limited to the 503 sample pages the parties agreed to, of which 25 were RIF, 68 were RIP and 410 were WIF.  Of the 410 pages WIF, the FBI determined the information on these pages was either fully covered by one or more FOIA exemptions, or determined that any non-exempt information on these pages was so intertwined with exempt material that no information could reasonably be segregated for release.

With the current action pending, on September 27, 2017, District Judge Vilardo, granted the Rule 29 motion filed in the criminal case with regard to the wire fraud

conspiracy and wire fraud counts, but denied the motion as to the materially false statements counts, and denied the Rule 33 motion.  *See United States v. Jabar*, 2017 WL 4276652 (W.D.N.Y. Sept. 27, 2017) ("*Jabar I*").  The Government appealed the post-verdict judgment of acquittal and the Second Circuit Court of Appeals reversed the judgment of acquittal on the wire fraud and wire fraud conspiracy counts, affirmed the denial of acquittal and motion for a new trial on the materially false statement counts, and remanded the criminal case to the district court for entry of judgment and consideration of the Rule 33 motion for a new trial on the wire fraud and wire fraud conspiracy counts.  *See United States v. Jabar*, __ F.4th __; 2021 WL 5406290 (2d Cir. Nov. 19, 2021) ("*Jabar II*").

## DISCUSSION

### 1.    Summary Judgment

Defendant DOJ moves for summary judgment on Plaintiff's challenges to the adequacy of the FBI's responses to Plaintiff's FOIA Requests.  Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party, *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011), and summary judgment may not be granted based on a credibility assessment.  *See Reyes v. Lincoln Automotive Financial Services*, 861

F.3d 51, 55 (2d Cir. 2017) ("Adverse parties commonly advance conflicting versions of the events throughout a course of litigation.  In such instances on summary judgment, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." (citations, quotation marks, and brackets omitted)).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  "A fact is material if it 'might affect the outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."  *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)).  Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the

nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133,137 (2d Cir. 2009)).

In the instant case, DOJ argues in support of summary judgment that the FBI's FOIA search was adequate, Defendant's Memorandum at 4-7, the FBI's FOIA Response was proper and complied with segregability requirements, *id*. at 8-9, and records were properly withheld in full or in part pursuant to FOIA Exemptions 1, 3, 5, 6, 7(C), 7(D), and 7(E).  *Id*. at 10-22.  In opposition, Plaintiff argues the FBI withheld from releasing records responsive to Plaintiff's FOIA request that would remedy potential "*Brady* violations"[4] that potentially occurred in connection with the criminal proceeding, Plaintiff's Response at 2-4, and that Plaintiff failed to properly segregate and release non-exempt material from records withheld in full.  *Id*. at 4-7.  In further support of summary judgment, Defendant argues FOIA is not the proper vehicle to remedy a *Brady* violation, Defendant's Reply at 1-4, and the Seidel Declaration establishes the FBI's segregability review was proper.  *Id*. at 5-6.

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963) (prosecutor's suppression of exculpatory evidence upon request violates Fourteenth Amendment due process).

2.    **FOIA Overview**

"The Freedom of Information Act adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies." *Halpern v. F.B.I.*, 181 F.3d 279, 286 (2d Cir. 1999) (citing cases).  "As noted by the Supreme Court, under FOIA, 'federal jurisdiction is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.''" *Grand Cent. Partnership, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quoting *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1980) (quoting *Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 150 (1980))).  "Only when each of these criteria is met may a district court 'force an agency to comply with the FOIA's disclosure requirements.'" *Id.*

"[T]he strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents."  *United States Dep't of State v. Ray,* 502 U.S. 164, 173 (1991).  The agency has the initial burden to show it conducted an adequate search for responsive records.  *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir.), *cert. denied*, 513 U.S. 823 (1994).  A search is considered adequate if it was reasonably calculated to uncover all relevant documents, yet reasonableness does not demand perfection, and a reasonable search need not uncover every document extant.  *Grand Cent. Partnership, Inc.,* 166 F.3d at 489.

"The FOIA requires that agency records be made available promptly upon a request that 'reasonably describes such records and ... is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed.'"

12

*Ruotolo v. Dep't of Justice, Tax Division*, 53 F.3d 4, 9 (2d Cir. 1995) (quoting 5 U.S.C. §

552(a)(3)).  FOIA, however, exempts from disclosure nine categories of information.  5

U.S.C. § 552(b)(1) through (9) ("Exemption (b)(___)").  "Accordingly, to prevail on a

summary judgment motion in a FOIA case, an agency must demonstrate 'that each

document that falls within the class requested either has been produced, is

unidentifiable, or is wholly exempt from the Act's inspection requirements.'"  *Ruotolo*, 53

F.3d at 9 (quoting *Nat'l Cable Television Ass'n Inc. v. FCC*, 479 F.2d 183, 186 (D.C. Cir.

1973)).  Furthermore, "'to prevail on a motion for summary judgment in a FOIA case, the

defending agency has the burden of showing that its search was adequate.'"  *Id*.

(quoting *Carney*, 19 F.3d at 812).

 "'Affidavits submitted by an agency are accorded a presumption of good faith;

accordingly, discovery relating to the agency's search and the exemptions it claims for

withholding records generally is unnecessary if the agency's submissions are adequate

on their face.'"  *Nat. Res. Def. Council, Inc. v. United States Dep't of Interior*, 36 F.

Supp. 3d 384, 398 (S.D.N.Y. 2014) (quoting *Carney,* 19 F.3d at 812 (citation omitted)).

"'In order to justify discovery once the agency has satisfied its burden, the plaintiff must

make a showing of bad faith on the part of the agency sufficient to impugn the agency's

affidavits or declarations, or provide some tangible evidence that an exemption claimed

by the agency should not apply or summary judgment is otherwise inappropriate.'"  *Id.*

(citations omitted).

 "Summary judgment is the preferred procedural vehicle for resolving FOIA

disputes."  *Bloomberg, L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 649 F.Supp.2d

262, 271 (S.D.N.Y. 2009).  "In order to prevail on a motion for summary judgment in a

FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney*, 19 F.3d at 812.  In contrast, "'[s]ummary judgment in favor of [a] FOIA plaintiff is appropriate when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption.'"  *Nat. Res. Def. Council, Inc. v. United States Dep't of Interior*, 36 F.Supp.3d 384, 398 (S.D.N.Y. 2014) (quoting *NY. Times Co. v. United States Dep't of Def.*, 499 F.Supp.2d 501, 509 (S.D.N.Y. 2007)).  In resolving a summary judgment motion in a FOIA action, the district court conducts a *de novo* review of an agency's response to a FOIA request including any government records which the agency claims are exempt from disclosing.  *See Lee v. F.D.I.C.*, 923 F.Supp. 451, 453 (S.D.N.Y. 1996) (citing 5 U.S.C. § 552(a)(4)(B); *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361-62 (1976).  Such "*de novo* review requires the court to reweigh the evidence compiled by the agency to determine whether the agency's findings are correct, not just whether they are reasonable."  *Id*. at 453-54.  Although FOIA authorizes *in camera* inspection of the documents in question, it is not required. *Id*. (citing 5 U.S.C. § 552(a)(4)(B)).

### 3. FOIA Request

The DOJ, on behalf of the FBI, argues in support of summary judgment that its search for records responsive to Plaintiff's FBI FOIA Request was adequate, FBI Memorandum at 4-7, FBI's FOIA response was proper, including with regard to segregability, *id*. at 8-9, and the withholding of records pursuant to FOIA Exemptions 1, *id*. at 10-11, 3, *id*. at 11-13, 5, *id*., at 13-16, 6 and 7(C), *id*. at 16-18, 7(D), *id*. at 18-20, 7(E), *id*. at 20-21, and 7(F), *id*. at 21-22.  In opposition, Plaintiff argues the information

withheld by the FBI includes records containing exculpatory material that would assist Plaintiff in his defense in the criminal case and thus should have been released pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) ("*Brady* material").  Plaintiff's Response at 2-4.  Plaintiff also maintains the FBI failed to comply with its burden of establishing that documents withheld in full contain no segregable information, *i.e.*, information that is not inextricably intertwined with the exempt portions and which should have been released.  Plaintiff's Response at 4-7.  In further support of summary judgment, the DOJ argues FOIA is not an appropriate vehicle for remedying an alleged *Brady* violation, DOJ's Reply at 1-5, and relies on the Seidel Declaration.  Defendant's Reply at 5-6.[5]

### A.    *Brady* Violation

Plaintiff argues in opposition to summary judgment that in connection with the criminal case, Plaintiff, on July 28, 2016, moved for supplemental discovery, particularly, documents withheld as classified.  Plaintiff's Response at 3 (citing Mahoney Affirmation ¶ 109); *see* 09-CR-170, Dkt. 367.  Although the court ordered the documents declassified and provided to Plaintiff, "the government turned over heavily redacted and practically unusable set of about 50 pages."  Plaintiff's Response at 3 (citing Mahoney Affirmation ¶ 107).  Although Plaintiff, as the defendant in the criminal case, complained the government was not acting in accordance with the court's order and reinstated its request for the documents, but the court failed to act on the request.  *Id*. (citing Mahoney Affirmation ¶ 114).  Plaintiff concedes the Second Circuit has yet to address

---

[5] Defendant also refers the court to the "Seidel Reply Declaration" for a further explanation of the FBI's segregability review with regard to a fifteen-page polygraph examination report that was released in part to Plaintfff, Defendant's Reply at 5-6, but attached to Defendant's Reply is a copy of the same Seidel Declaration previously filed in support of Defendant's Motion on November 30, 2020, as Dkt. 46.

whether FOIA may be used to remedy a *Brady* violation, but notwithstanding asserts the instant action "presents the perfect set of facts and circumstances" to allow a *Brady* violation to be cured by FOIA.  *Id*.  In further support of summary judgment, Defendant argues FOIA is not a proper vehicle for remedying potential *Brady* violations, asserting Plaintiff essentially is requesting the court to conduct an *in camera* review of documents withheld by the FBI to determine if any *Brady* violations occurred in connection with the criminal case.  Defendant's Reply at 1-4.

Although Plaintiff is correct that the Second Circuit has yet to address this issue, it has been repeatedly addressed by other courts, including the District Court of District of Columbia, and the District of Columbia Circuit Court of Appeals.  Significantly, these courts have repeatedly held that FOIA is not meant to uphold the constitutional interests protected by *Brady*.  *See*, *e.g.*, *Boyd v. Criminal Div. of United States Dep't of Justice*, 475 F.3d 381, 490 (D.C.Cir. 2007) (The disclosure obligation that *Brady* imposes at a defendant's criminal trial based on constitutional considerations is not the same disclosure obligation imposed under FOIA by Congress . . . .  In other words, the disclosure requirements are not coextensive."); *Richardson v. United States Dep't of Justice*, 730 F.Supp.2d 225, 234 (D.D.C. 2010) (FOIA confers no entitlement to information that should have been available to a defendant during criminal proceedings pursuant to *Brady*); *Mingo v. United States Dep't of Justice*, 2009 WL 2618129, at *2 (D.D.C. Aug. 24, 2009) (rejecting argument that the requested agency deliberately withheld exculpatory information in violation of the Fifth Amendment because the government's constitutional obligation under *Brady*, *i.e.*, to disclose exculpatory material to a defendant in a criminal proceeding, is not coextensive with the agency's statutory

obligations under FOIA).  Plaintiff's reliance on *Ferri v. Bell*, 671 F.2d 769, 771 (3d Cir. 1981), for the contrary proposition that "[t]he public at large has an important stake in ensuring that criminal justice is fairly administered; to the extent disclosure may remedy and deter Brady violations, society stands to gain," *modified*, 671 F.2d 769 (3d Cir. 1982), is inapposite because the Third Circuit Court of Appeals subsequently specified a possible *Brady* violation was only one factor to be balanced in considering whether disclosure of information is precluded pursuant to FOIA Exemption 7(C) (unwarranted invasion of privacy), *Ferri*, 671 F.2d at 771, and thus fails to establish a *per se* right to FOIA disclosure of *Brady* material.

  Nor is FOIA "a substitute for discovery in criminal cases or in habeas proceedings. Instead, its purpose is to protect the citizens' right to be informed about what their government is up to."  *Roth v. United States Dep't of Justice*, 642 F.3d 1161, 1177 (D.C.Cir. 2011).  Plaintiff references no persuasive caselaw to the contrary, nor has the court's research found any.

Moreover, with the Second Circuit's recent remand of the criminal case to this court for consideration of Plaintiff's Rule 33 motion for a new trial on the wire fraud and wire fraud conspiracy counts, *Jabar II*, __ F.4th __; 2021 WL 5406290 at * 9 (2d Cir. Nov. 19, 2021) ("*Jabar II*"), the criminal case is not yet resolved and Plaintiff conceivably can pursue the alleged *Brady* violation in that proceeding.  This assumes that the *Brady* issue was not resolved by the Second Circuit and that Plaintiff did not fail to raise the issue on appeal, thus waiving the asserted *Brady* claim, an issue not addressed by the parties.

Accordingly, Defendant's Motion should be GRANTED as to this argument.

**B.      Segregability**

The DOJ asserts that after identifying 5,368 pages of records responsive to Plaintiffs' FOIA Request, the FBI further determined 154 pages would be released in full ("RIF"), 632 would be released in part ("RIP"), and 4,582 would be withheld in full ("WIF"), FBI Memorandum at 7, and of the agreed-to sample of 503 responsive documents, 25 were RIF, 68 were RIP, and 410 were WIF.  *Id.* at 9.  DOJ explains that the 68 pages RIP contain redacted information pursuant to FOIA Exemptions which were segregable from portions of the records that could be released without triggering foreseeable harm to any interest protected by the relevant FOIA exemptions.  *Id.* at 9.  With regard to the information that was WIF, DOJ further explains that additional segregation of the intertwined material would yield only "disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content."  *Id.* (citing Seidel Declaration ¶ 163).  In opposing summary judgment, Plaintiff argues Defendant failed to show the lack of segregability with reasonable specificity as required to support withholding in full 410 of the 503 sample pages responsive to the FBI's FOIA Request.[6]  Plaintiff's Response at 4-5 (citing cases).  In further support of summary judgment, Defendant maintains the Seidel Declaration adequately explains why it was not possible to segregate and release information from the pages responsive to the FOIA Request that were WIF.  Defendant's Reply at 5-6.

Insofar as Plaintiff urges the court to "conduct an *in camera* review of the pages withheld inf full to determine whether or not there are any segregable portions," Plaintiff's Memorandum at 6-7, Congress left it in the Court's discretion to determine

---

[6] Plaintiff does not challenge the redactions leading to FOIA Request responsive pages being RIP.

whether or not to undertake *in camera* review.  *Military Audit Project v. Bush,* 418
F.Supp. 876, 879 (D.D.C. 1976).  Further, where the Government's affidavits on their
face indicate the documents withheld logically fall within the claimed exemptions and
there is no doubt as to the requested agency's good faith, the court should restrain its
discretion to order *in camera* review.  *Lead Industries Ass'n, Inc. v. Occupational Safety
and Health Administration,* 610 F.2d 70, 87-88 (2d Cir. 1979).  In the instant case, no *in
camera* review is required because the Seidel Declaration objectively verifies the FBI's
asserted decision to deny disclosing documents and portions of documents pertaining
to the FBI's law enforcement duties relative to criminal investigations.

In particular, Seidel avers with regard to the sample of 503 pages responsive to
the FOIA Request, 25 pages that were RIF, 68 RIP, and 410 WIF.  Seidel Declaration ¶
163 (citing Seidel Declaration ¶ 4).  With regard to the 410 pages WIF, Seidel explains

> RIDS determined that all information on these pages was either fully covered by
> one or more of the cited FOIA exemptions, or determined that any non-exempt
> information on these pages was so intertwined with exempt material, no
> information could be reasonably segregated for release.  Any further segregation
> of this intertwined material would employ finite resources only to product
> disjointed words, phrases, or sentences, that taken separately or together, would
> have minimal or no informational content.

Seidel Declaration ¶ 163.c.

"Disclosable information cannot be easily separated from that which is exempt
without compromising the secret nature of the information."  *Doherty v. United States
Dep't of Justice*, 775 F.2d 49, 52–53 (2d Cir. 1985).  As such, "that there may be some
nonexempt matter in documents which are predominantly exempt does not require the
district court to undertake the burdensome task of analyzing" withheld documents *in*

*camera*.  *Id.* (citing *Lead Industries,* 610 F.2d at 88. *See also Weissman v. CIA,* 565 F.2d 692, 697–98 (D.C.Cir.1977)).

Here, the Seidel Declaration provide an objective verification in support of the FBI's decision to deny disclosure of documents containing intelligence information and material pertaining, as the FBI asserts.  In particular, Plaintiff has not come forward with any basis calling into question Seidel's explanation that the non-exempt information found on the pages that were WIF is "so intertwined with exempt material" that "no information could be reasonably segregated for release," thereby supporting the need for *in camera* review, and that "[a]ny further segregation of this intertwined material would employ finite resources only to produce disjointed words, phrases, or sentences that taken separately or together, would have minimal or no informational content."  As such, in the instant case, there is no reason to put aside the good faith presumption afforded the FBI's explanation provided by Seidel.  *See Ramaci v. Fed. Bureau of Investigation*, 2021 WL 4896277, at * 10 (S.D.N.Y. Oct. 20, 2021) (holding FOIA plaintiff, by failing to counter affidavit by Seidel that further segregability would yield only sentence fragments that provided no information, also failed to overcome the presumption of good faith afforded to such affidavit); *Mermerlstein v. United States Dep't of Justice, Fed. Bureau of Investigation*, 2021 WL 3455314, at *17 (E.D.N.Y. Aug. 4, 2021) (same).

Summary judgment should be GRANTED on Defendant's Motion pertaining to the segregation of information withheld in full.

## **CONCLUSION**

Based on the foregoing, Defendant's Motion (Dkt. 43) should be GRANTED.  The

Clerk of Court should be directed to close the file.


Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        November 24th, 2021
              Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      November 24th, 2021
                    Buffalo, New York

22